IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANLEY HENRY, #A50858, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10–cv–58–MJR–SCW |
| | ) |
| JOHN COX, et al., | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b), and LOCAL RULE 72.1(a)** for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust his administrative remedies as to his claims that Defendants arranged for Plaintiff to be attacked by his cellmate in violation of his Eighth Amendment rights and that Defendants retaliated against Plaintiff in violation of his First Amendment Rights[1], that Defendants motion for summary judgment for failure to exhaust administrative remedies be **DENIED** (Doc. 38), and that the Court **ADOPT** the following findings of fact and conclusions of law.

---

[1] During the *Pavey* hearing, both sides discussed a subsequent grievance filed by Plaintiff regarding his lost property which occurred around the same time as the attack at issue in this matter. However, it does not appear that Plaintiff's claims of lost property are part of the current suit before the Court, thus the exhaustion of that related grievance is not as issue in this case.

## II. Findings of Fact

### A. Procedural History

Plaintiff filed his Complaint in this case on January 26, 2010 (Doc. 1). In his Complaint, Plaintiff alleges that Defendant Suit orchestrated an attack against him by his cell-mate, an inmate by the name of McClinton, because of Plaintiff's verbal and oral grievances regarding his placement in segregation. Specifically, Plaintiff alleged that in the early morning hours of June 28, 2009, he was attacked by his cell-mate McClinton while he was trying to get into bed after returning from the washroom (Doc. 1 ¶1). Both McClinton and Plaintiff were sent to segregation and Plaintiff was transferred the next day to the disciplinary unit.

The Complaint also alleged that several other Defendants including Defendants Howard, Soliday, Stevens, Kern, Woolridge, Taylor, and Buchmyer, knew about the attack and facilitated in the attack and cover-up. Plaintiff further alleged that Defendant Nurse Maryann and Harrison engaged in further acts of retaliation against him by pushing and hitting him (*Id.*). On July 2, 2010, the Court completed its threshold review of the Complaint, finding that Plaintiff had adequately presented two claims: 1) against Defendants Cox[2], Suit, Howard, Soliday, Kerns, Woolridge, Taylor and Buchmyer for arranging for McClinton to attack Plaintiff in violation of Plaintiff's Eighth Amendment rights, and (2) against Defendants Cox, Suit, Howard, Soliday, Stevens, Kern, Woolridge, Taylor, Buchmyer, Nurse Maryann, and Harrison for retaliating against Plaintiff for both his written and oral grievances in violation of Plaintiff's First Amendment rights (Doc. 13).

In their Answer to Plaintiff's Complaint, Defendants raised the affirmative defense that

---

[2] The Court notes that in its §1915 review (Doc. 13), Defendant Cox survived the Court's threshold review and was discussed in the body of that Order but was inadvertently left out of the designated Counts. Defendant Cox should have been named in both Counts 1 & 2 as was alleged in Plaintiff's Complaint. Therefore, the Court finds that Defendant Cox remains a Defendant as to both Counts 1 & 2 of Plaintiff's Complaint.

Plaintiff failed to exhaust his administrative remedies under **42 U.S.C. § 1997e(a)** (Doc. 29 p. 11 at ¶2). Subsequently, Defendants filed a motion for summary judgment on the issue of exhaustion of administrative remedies (Docs. 38, 39). Plaintiff filed a Response to Defendants' motion (Doc. 45) and Defendants have filed a Reply (Doc. 48, 53). Plaintiff further filed an exhibit list in support of his Response (Doc. 54).

Based on the Seventh Circuit's opinion in *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008)**, the undersigned held a hearing in this matter on May 31, 2011 (*See* Doc. 35). The following recommendations are based upon the evidence adduced at that hearing.

**B.     Factual Background**

At issue are two grievances allegedly filed by Plaintiff on June 29, 2009 and July 10, 2009 regarding the June 28, 2009 attack by McClinton. At the *Pavey* hearing, Plaintiff testified that he submitted his first grievance, marked as an emergency grievance, to an unknown correctional officer while in segregation to deliver to Warden Cox (Doc 57 at pp. 35:7-36:14; 49:18-21). Once Plaintiff was released from segregation and placed in the disciplinary unit, he states that he completed an addendum to the grievance on July 10, 2009, also marked as an emergency grievance, and placed that grievance in the grievance box (*Id.* at pp. 37:9-38:1; 38:16-23). Although he received neither copy of his grievances back from Warden Cox, he did make a copy of the addendum which is included in his Response (*See* Doc. 45 Ex. A). He never received a response from Warden Cox either on the original grievance or the addendum (Doc. 57 at pp. 36:24-37:1; 39:13-15). On August 25, 2009, he testified, and the exhibits support, that he sent a request to C/O Wentworth regarding the status of his grievances (Doc. 54-1, Henry 034; Doc. 57 at p. 44:1-10). Grievance Officer Fields responded to Plaintiff's request, informing him that no grievances were on file for the time period specified by Plaintiff (Doc. 54-1, Henry 034-035;

Doc. 57 at pp. 44:11-14; 53:14-18).[3] Plaintiff again wrote Wentworth in response to the request, stating that the grievance he was inquiring about involved an assault perpetrated against him (Doc 54-1, Henry 036).

Having failed to receive a response to his grievance, Plaintiff filed an appeal with the ARB, stating that Warden Cox had failed to respond to his emergency grievance (Doc. 45 Ex. C; Doc. 57 at pp. 41:16-42:12). The ARB returned the appeal to Plaintiff indicating that Plaintiff needed to include the Grievance Officer and Chief Administrative Officer's response to his initial grievance (Doc. 39 Ex. B; Doc. 57 at pp. 42:13-21; 50:10-17). Defendants acknowledge that Plaintiff sent an appeal to the ARB and that the ARB returned Plaintiff's form for his failure to include additional information that was required for the appeal. Plaintiff also sent two correspondence to the John Howard Association asking for help with his unanswered grievances (Doc. 45 Ex. D & E; Doc. 57 at p. 45:15-24). Charles Fasano, Director of the Prisons and Jails Program, wrote two letters to Warden Cox requesting the status of the emergency grievances referred to in Plaintiff's letters (Doc. 45 Ex. F & G).

Also at the hearing, Defendant Cox, who was acting warden at the time of the incident involving Plaintiff, testified that he had never received an emergency grievance from Plaintiff (Doc. 57 p. 6:18-24). Further, he testified that had such a grievance containing an allegation that prison officials had organized an attack on a prisoner by another prisoner been received, such allegations would have triggered an internal affairs investigation and that in this case no investigation was ever conducted because Plaintiff's grievances were never received (*Id.* at pp.6:25-7:12; 7:13-17). Defendant Cox did admit that he had received a letter from Charles Fasano from the John Howard Association of Illinois referencing grievances filed by Plaintiff regarding the assault (*Id.* at pp. 8:18-23; 11:1-14). Cox further

---

[3] Plaintiff testified that at the time he received a response to his inquiry he did not realize that the response came from Grievance Officer Fields (*See* Doc. 57 at p. 53:10-18).

testified that at the time he received the letters, he recalled being confused by their contents as he did not recall receiving an emergency grievance from Plaintiff (*Id.* at p. 15:1-9). In response to the letter, he inquired with the grievance officer and discovered that no grievances were on file for Plaintiff regarding the conspired assault (*Id.* at pp. 23:25- 24:7; 24:11-12). He also called Fasano and left a voicemail inquiring about the letter, but never received a response from Fasano (*Id.* at pp. 15:1-9, 10-15; 8:18-23; 9:23-10:6). He did not recall whether a copy of Plaintiff's grievances were attached to the letter from Fasano but stated that such attachments would not have constituted a formal grievance filing (*Id.* at pp. 15:23-25; 16:8-20; 19:10-21).

Defendants argue that Plaintiff has failed to exhaust his administrative remedies as there is no record of Plaintiff having filed any emergency grievance (Doc. 57 at p. 55:12-18). Defendants further argue that Plaintiff's credibility has been called into question due to his automatic assertions in the negative to many of the questions asked of him as to responses he received, which he later had to correct when it was discovered he had in fact received responses.[4] Plaintiff, on the other hand, argues that Defendants have failed to meet their burden in proving that Plaintiff had other avenues to pursue with his grievance as Plaintiff had done everything he could be expected to do when he failed to receive a response from his emergency grievance and his appeal was rejected. Plaintiff also argued that Defendant Cox's credibility was in question as he originally did not recall Plaintiff Henry, but then testified that he remembered receiving a letter from Fasano regarding Plaintiff Henry's grievances.

---

[4] In particular, Defendants point to an instance where Plaintiff was asked if he had received a response on his inquiry to C/O Wentworth regarding the status of his grievance. He automatically answered no but then was directed to another portion of the exhibit which showed that a grievance officer, although not Wentworth, had responded to his inquiry. The Court pointed out to Defendants' attorney that Plaintiff's second inquiry appeared to be a direct response to the answer he had received from the grievance officer. Defendants' attorney acknowledged the fact but stated that Plaintiff automatically answered "no" instead of saying "yes" that he had received a response and filed a further inquiry in response to the grievance officer's answer, which Defendants allege puts his credibility into question.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Henry, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are

to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

### A. Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Henry was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance, as Henry alleges he has done in this case. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the

CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 U.S.C. §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 U.S.C. §504.850(g)**.

**B.     Analysis**

In both their summary judgment motion and the *Pavey* hearing, Defendants argue that Plaintiff has failed to fully exhaust his administrative remedies. Defendants argue that Plaintiff never submitted any emergency grievances and that the only appeal on record was returned for Plaintiff's failure to use the proper form and include the proper materials. Plaintiff, on the other hand, insists that he did all that was in his power to submit his emergency grievances to the warden and exhausted all of his available remedies.

After considering both Plaintiff Henry and Defendant Cox's testimony at the *Pavey* hearing, the Court finds both their version of events to be credible and consistent with each other. On the day after his attack, Plaintiff wrote an emergency grievance to Warden Cox and handed it to an unknown correctional officer for delivery. For reasons unknown, that grievance never reached the warden. While the correctional officer has never been identified by either party, it is Defendants' burden to prove that Plaintiff failed to exhaust his administrative remedies, yet they have offered no evidence as to whether any officer received a grievance from Plaintiff on the day in question or even what officers were on duty on the day that Plaintiff allegedly handed in his grievance. *See Kaba*, **458 F.3d at 681 (citing** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)(exhaustion is an affirmative defense, thus placing the burden of proof on the prison authorities))**. Once Plaintiff was released from segregation he wrote an addendum to his grievance and placed it in the prison mail system, although it never reached Warden Cox.

While Warden Cox testified that he never received Plaintiff's grievances, his testimony, while credible, is not inconsistent with Plaintiff's testimony that he wrote and sent the grievances. Although Cox testified he never received Plaintiff's grievances, his testimony does not discount the testimony that Plaintiff wrote and properly submitted the grievance. The Court also found Plaintiff's testimony that he wrote and submitted the grievances credible and his testimony was supported by the copy of the addendum submitted to the Court, as well as his various inquiries to the grievance officer about the status of his grievance regarding the assault and his appeal to the ARB after not receiving a response from Warden Cox. In particular, the Court is persuaded by the fact that Plaintiff made two inquiries of the grievance officer concerning the status of his grievance within the sixty days time frame in which he could still have filed his initial grievance had he not already done so (Doc. 54-1). It appears from the evidence submitted that Plaintiff submitted a grievance and addendum but neither document reached the warden. Whether a correctional officer inadvertently disposed of the grievances or they were lost in the internal mail of the prison is unknown, but it appears from the evidence before the Court is that Plaintiff submitted timely grievances but those grievances never made it to Warden Cox's desk and thus Plaintiff never received a response to either submission.

Having never received a response regarding his grievances, Plaintiff argues that he had done everything necessary for exhaustion purposes. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D.Ill 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances."**

**(quoting** *Lewis v. Washington***, 300 F.3d 829, 833 (7th Cir. 2002)).** The undersigned agrees as an inmate is not required to further pursue his grievance when officials fail to respond. Even still, he did go ahead and try to appeal his grievance to the ARB after failing to receive a response from Warden Cox. However, the ARB returned his appeal because it was not on the proper form and did not include his counselor or chief administrative officer's response, despite his appeal stating that he had never received a response from the warden. At that point, the undersigned finds that Plaintiff had exhausted all of the administrative remedies that were available to him under **42 U.S.C. § 1997e(a)**. *Kaba***, 458 F.3d at 684 (if administrative remedies are not available then prisoner can not be required to exhaust)**. Once Plaintiff's appeal was returned to him, Plaintiff was for all practical purposes "stuck" or as Plaintiff's attorney put it "in a Catch-22." Plaintiff could not submit his counselor's response or the response of the CAO as directed by the ARB (see Doc. 39 Ex. B) as he had never received a response from either official, thus he could not pursue his claim through the ARB. Furthermore, Plaintiff could not pursue his claim through the regular grievance process because both his appeal to the ARB, dated September 2, 2009, and his inquiries to his grievance counselor, dated August 25, 2009 and August 26, 2009, were outside of the 60 day time period for filing grievances. Thus, by the time that Plaintiff discovered that his grievances were not on file, the time limit for filing such a grievance had run. He, in essence, had no further available remedies in which to pursue.

Further, Defendants have not met their burden of proving that Plaintiff had other avenues available to him with which to pursue his grievance regarding the attacks. In fact, Defendants' attorney admitted that should Plaintiff have tried to pursue his grievance, after receiving his appeal back from the ARB, by starting the grievance process over again, such grievance would more than likely have been deemed untimely as both the appeal to the ARB, which was dated September 2, 2009, and any future grievance would have been outside of the 60 day limitation (Doc. 57 at p. 61:1-62:3). Thus, the

undersigned **RECOMMENDS** that the Court find that Plaintiff had exhausted all of his available administrative remedies.

## IV. Conclusion and Recommendation

For the reasons set forth above, it is **RECOMMENDED** that the Court **FIND** that Plaintiff has exhausted his administrative remedies and that Defendants' motion for summary judgment (Doc. 38) be **DENIED**, and that the Court **ADOPT** the foregoing findings of fact and conclusions of law. If the Court adopts this Report and Recommendation, then all Plaintiff's claims against all Defendants will remain pending.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

**IT IS SO ORDERED**.

DATED: June 20, 2011

> /s/ *Stephen C. Williams*
> STEPHEN C. WILLIAMS
> United States Magistrate Judge